The STATE of Ohio, Appellee,

v.

CROSBY, Appellant.

[Cite as *State v. Crosby* (1993), 92 Ohio App.3d 455.]

Court of Appeals of Ohio,
Marion County.

No. 9-92-52.

Decided Dec. 23, 1993.

*Jim Slagle,* Marion County Prosecuting Attorney, and *Tina Lesley Carper,* Assistant Prosecuting Attorney, for appellee.

*Hall, Bebout & Hall* and *Kevin R. Hall,* for appellant.

EVANS, Presiding Judge.

This is an appeal by Ronald G. Crosby, an inmate of the Marion Correctional Institution ("MCI"), from a conviction and sentence for the crime of theft from the commissary of MCI.

MCI operates a commissary for the benefit of the inmates confined at that facility. A wide variety of products is made available through the commissary, such as candy, coffee, tobacco and shaving equipment. On January 4, 1992, a routine inventory of all merchandise in the commissary was taken. On January 11, 1992, the corrections officers of MCI discovered approximately $700 worth of merchandise from the commissary concealed in the crawl space above the ceiling of the commissary storeroom. An inventory of the commissary taken on January 13, 1992 established that the commissary supplies were short by almost exactly the quantities found in the ceiling.

Investigation disclosed that a fluorescent light fixture in the ceiling of the commissary storeroom had been modified to permit easy removal by someone in the crawl space above the ceiling while the appearance of the fixture, when viewed from below while standing in the storeroom, remained unchanged. The state introduced no evidence to establish the identity of the person or persons who modified the light fixture.

The evidence is undisputed that on January 11, 1992, a Saturday night, the appellant and three other inmates were admitted to a classroom adjacent to the commissary by the corrections officers of MCI. The inmates were admitted to the classroom because they had a work order to repair the heater in that room. However, the evidence is also undisputed that the work order had been obtained from the inmate clerk in the maintenance department without the usual procedures to obtain a work order having been followed. Ordinarily a work order is authorized by the head of the maintenance department in response to a requisition filled out by a corrections officer requesting the maintenance department to correct a specific problem in the institution, such as a leak in a water line or a malfunctioning compressor in one of the kitchen freezers. According to the inmates, the necessary repairs required that they have access to the crawl space

above the classroom. This access would also give those inmates access to the modified light fixture in the ceiling of the commissary storeroom.

The four inmates who were involved in the repair of the heating fixture were indicted for the crime of theft. On the day trial was scheduled to begin, appellant waived his right to be tried by a jury and elected to be tried by the same common pleas judge who would be presiding over the jury trial of the other three defendants. Although the other three defendants were found not guilty by the jury, the appellant was found guilty in the trial to the court. Appellant timely appealed the court's verdict of guilty, asserting four assignments of error.

█ Appellant's first assignment of error is:

"The appellant was denied due process under the fourteenth amentment [*sic*] because his criminal conviction was not based upon sufficient evidence to show appellant's guilt beyond a reasonable doubt; and the trial court judge's analysis of the evidence and guilty finding was irrational and inconsistent with the acquittal of the other defendants."

In *State v. Jenks* (1991), 61 Ohio St.3d 259, 574 N.E.2d 492, the Supreme Court announced the proper standard of appellate review when considering the sufficiency of the evidence:

"Proceeding to consider the proper standard of appellate review, where the evidence is either circumstantial or direct, we conclude that the relevant inquiry on appeal is whether any reasonable trier of fact could have found the defendant guilty beyond a reasonable doubt. In other words, an appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. * * * Thus, in reviewing both weight and sufficiency of the evidence, the same test is applied. The verdict will not be disturbed unless the appellate court finds that reasonable minds could not reach the conclusion reached by the trier of facts." *Id.* at 273, 574 N.E.2d at 503.

Applying this test to the evidence in this case, we conclude that the average mind would be convinced of the guilt of the appellant beyond a reasonable doubt.

First, we consider the merchandise found in the crawl space above the ceiling of the commissary store room. The fact that the inventory taken on January 13 matched exactly with the inventory taken on January 4 after the merchandise found in the crawl space was added to the count would convince the average mind that the goods in question were taken from the storeroom between the dates of January 4 and January 13. Furthermore, this evidence would convince the average mind that this merchandise was taken by gaining access through the light fixture in the ceiling of the storeroom. Due to the presence of corrections

officers at all times when the commissary is open, there is no chance that the merchandise could have been taken when the commissary was open for business. In addition, the sheer volume of the things taken would eliminate the possibility of theft during business hours. The evidence also demonstrates that the commissary showed no signs of forced entry during the period in question.

Turning to the question of the identity of the persons responsible for taking the merchandise, the evidence shows that this appellant along with three other inmates was involved in a scheme to secure a work order to fix a heater in the classroom adjacent to the commissary without going through the proper and usual procedures of MCI. The evidence also shows that this appellant was not assigned to work on electrical problems; rather, his area of responsibility was the repair of drinking fountains and compressors in freezers and air conditioners. Nevertheless, appellant elected to initiate the request for the work order and volunteer to show up on Saturday night to participate in the repair of the heater even though, in the absence of an emergency, the regular work schedule for the inmates is Monday through Friday. The evidence also shows that when the inmates arrived at the classroom none of the usual preliminary work to determine the exact nature and location of the problem was undertaken. The inmates failed even to take the time to interrupt the flow of electricity in the line they claimed they would be working on by throwing the circuit breaker. Rather, the inmates immediately positioned a ladder for access to the ceiling and disappeared into the crawl space, claiming they had to replace some burned-out wires.

Finally, it must be remembered that MCI is a penal institution where the activities of the inmates are supervised twenty-four hours a day. Thus, it would have been nearly impossible for an inmate to gain access to the crawl space above the commissary storeroom without the corrections officers' being aware of it. Since the inmates are not allowed to have tools and equipment without the knowledge of the corrections officers, possession of a ladder to gain access to the crawl space would have been out of the question. Furthermore, the state produced evidence from one of the supervising corrections officers that no one else had been up in the ceiling over the classroom since last November, at least two months prior to the theft.

The appellant also challenges the analysis of the evidence and the finding of guilty by the trial judge because they are inconsistent with the jury verdict of not guilty for the other three defendants. It is established beyond question that the trier of fact has the responsibility to assign the weight to be given the evidence in the case and the creditability of the witnesses testifying in the case. There is no requirement that any consistency exist when these two functions are carried out by different triers of fact. Each trier of fact listens with a different set of ears and views the witnesses with a different set of eyes. Based on the

experiences of a lifetime, the trier makes the necessary judgments. It is not indicative of error when these judgments differ from time to time.

The first assignment of error is overruled.

■ Appellant's second assignment of error is as follows:

"The trial court committed prejudicial error by denying appellant's motion for a mistrial, recusing itself from the case, and not granting appellant a new trial pursuant to Crim.Rule 33(A)(2), because appellant was denied the guarantee of a fair and impartial trier of fact due to prosecutorial misconduct."

This assignment of error is based on the fact that from time to time during pretrial discovery and plea negotiations the prosecuting attorney sent correspondence to all defense counsel with copies to the trial judge. Appellant contends that the content of these letters prejudiced the judge to such an extent that he could no longer be a fair and impartial trier of fact.

This assignment of error is overruled for three reasons. First, the judge denied having read any of the letters. Thus, the record does not support the claim of prejudice. Second, appellant filed no affidavit of prejudice against the trial judge and, third, appellant knew that the trial judge had received the letters from the prosecuting attorney when he decided to waive his right to a jury trial and let the judge decide his case. Thus, at the very least, this presents a case of invited error which appellant cannot take advantage of in this court.

■ Appellant asserts for his third assignment of error the following:

"The trial court committed prejudicial error by overruling appellant's motion for acquittal pursuant to Crim.R. 29(A) at the close of the state's case; and denied the appellant due process by refusing to consider his motion for acquittal pursuant to Crim.R. 29(C)."

For the reasons given in our discussion of the first assignment of error, we find no error on the part of the trial court in overruling appellant's motion for acquittal at the conclusion of the state's case. The trial court refused to consider appellant's Crim.R. 29(C) motion on the grounds that the rule applied only to jury trials. We find no error in this position by the trial court but even if we consider the motion as a renewal of the Crim.R. 29(A) motion we find no prejudice to the appellant in view of the evidence.

The third assignment of error is overruled.

■ Appellant's last assignment of error asserts the following:

"The trial court committed prejudicial error by permitting the state to introduce out-of-court statements made by an inmate to a corrections officer pursuant to Evid.R. 803(1), thus violating defendant's right to confront and cross-examine

witnesses against him as guaranteed by the sixth amentment [*sic*] to the United States Constitution and article I, section 10 of the Ohio Constitution."

The offending statement which gave rise to this assignment of error consisted of the following:

"Q. During the evening hours, did it come to your attention that the Defendants were working in the classroom, Classroom 10/11 near the Commissary?

"A. Yes, Room 11.

"Q. How did that come to your attention?

"A. An inmate brought it to my attention.

"Q. And what did he bring to your attention?

"Mr. Rowland: Objection, Your Honor. It's hearsay.

"THE COURT: Overruled.

"A. He came in, and he said, 'I don't know what those Electricians are doing in Room 11. They said they were working on the heater.' He said, 'I just left there, and the heater worked fine.'

"Q. And what did you do?

"A. I told Officer Rife and Pressley to keep an eye on them."

It is evident that this statement was offered and admitted not to prove the truth of the matter asserted but rather to explain why the corrections officers checked this work crew more closely than might otherwise have been the case, and why the officers went up in the crawl space to look around as soon as the inmates finished their work. It should be noted that the statement makes no reference to the commissary and in fact makes no specific charge of wrongdoing against this appellant or any of the other defendants in the trial court. Thus, we conclude that the statement made by the inmate to the corrections officer does not make the inmate a witness against this appellant. Therefore, the fact that the appellant did not get the opportunity to confront the inmate and to cross-examine him did not deprive the appellant of any constitutionally guaranteed rights.

Appellant's fourth assignment of error is overruled.

Having found no error prejudicial to appellant herein in any of the particulars assigned and argued, the judgment of the trial court is affirmed.

*Judgment affirmed.*

THOMAS F. BRYANT and HADLEY, JJ., concur.